UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO MARTINEZ, et al.,

     Plaintiffs,

v.

     Hon. Robert J. Jonker

     Case No. 1:16-cv-00681-RJJ-PJG

BLUE STAR FARMS, INC., et al.,

     Defendants.

_____/

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiffs' petition for expenses (ECF No. 72), pursuant to Federal Rule of Civil Procedure 37(a)(5), relating to their successful motion to compel discovery (ECF No. 50). They seek $11,805.00 in fees and $192.60 in costs. Defendants object generally to the award of expenses, as well as to the amount sought by plaintiffs. (ECF No. 80).

Also before the Court is the issue of sanctions for defendants' violation of the Court's August 4, 2017, compulsion order (ECF No. 66). The Court conducted an evidentiary hearing on November 21, 2017 (Minutes, ECF No. 124), and found that defendants had violated that order (*see* Hrg. Tr. at 54-55, ECF No. 126, PageID.4367-68). The Court held in abeyance the issue of the appropriate sanction.

For the reasons stated herein, plaintiffs' petition for expenses will be granted in part and denied in part. The Court will sanction defendants for their violations of the discovery order by awarding plaintiffs their reasonable expenses incurred in pursuing their show-cause motion, as well as their second motion to compel.

## Procedural and Factual Background

This is an action brought by migrant and seasonal agricultural workers who harvested blueberries for defendants between 2011 and 2013. Plaintiffs filed suit on June 3, 2016. (Complaint, ECF No. 1). They allege that defendants employed approximately 140 workers each season to pick blueberries on defendants' 460-acre fields. The Court has certified this as a class action, defining the class as follows: "All migrant and seasonal agricultural workers employed at Blue Star Farms to harvest blueberries in 2011, 2012, and 2013." (Order on Mtn Class Cert. at 2, ECF No. 148, PageID.6656).

In the pending complaint (Second Amended Complaint), plaintiffs claim, on behalf of the class, that defendants violated the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1854(a), by requiring workers to wait for the blueberry fields to dry without compensation; by failing to make, keep, and preserve accurate time-keeping records; by failing to provide workers with pay stubs showing the hours worked; and providing false or misleading information to the workers regarding their hours worked. (Count II, ECF No. 97, PageID.3014-15). Plaintiffs Martinez and Garrido claim that defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), during the three years preceding the filing of the complaint, by failing to pay the federally-mandated minimum wage and in failing to maintain the requisite records. (Count I, PageID.3013-14). Plaintiff Garrido claims that defendants violated the AWPA by failing to follow certain labor protection standards. (Count III, PageID.3015-16).

The original Case Management Order (CMO) set an April 1, 2017, deadline for filing both the conditional certification of a collective action under the FLSA (court-supervised notice to potential opt-in plaintiffs) and the motion for class certification regarding the AWPA claim. (ECF No. 13, PageID.71). The CMO set a September 30, 2017, deadline for completing discovery, and an October 31, 2017, deadline for filing dispositive motions. (*Id.*, PageID.72).

Plaintiffs filed their First Amended Complaint on October 7, 2016 (ECF No. 14), and defendants answered on October 21, 2016 (ECF No. 19). The Court declined to exercise supplemental jurisdiction over the plaintiffs' state law claim under the Michigan Minimum Wage Law, MICH. COMP. LAWS § 408.381, *et seq.* (Count II of the amended complaint), and dismissed that claim without prejudice. (Oct. 17, 2016, Order, ECF No. 18).

On March 5, 2017, the Court granted the parties stipulation to extend the deadline for filing plaintiffs' motion for class certification to May 31, 2017. (ECF No. 26). This extension was necessitated by defendants' request for additional time to respond to plaintiffs' discovery. (*See id.*, PageID.146). The Court granted a second stipulated extension of that deadline on May 30, 2017. (ECF No. 47). Among other things, the parties indicated in the proposed stipulation that defendants had produced "their largest production of documents to Plaintiffs on May 1, 2017," and that plaintiffs were "continu[ing] to analyze that production, which include[d] a large volume of material relevant to both class certification issues and damages." (*Id.*, PageID.468).

On April 1, 2017, plaintiffs filed their motion for the issuance of court-supervised FLSA notice to potential opt-in plaintiffs. (ECF No. 34). The Court denied that motion on June 23, 2017. (ECF No. 49).

On July 10, 2017, plaintiffs filed a motion to compel discovery, seeking "complete records in response to requests for production 6 and 24, including hard copy personnel files for Plaintiffs and putative Class members[,] and Microsoft Excel spreadsheets with time and pay information." (ECF No. 50, PageID.482). Document request 6 sought "[c]omplete records and files relating to each Plaintiff and Class member including but not limited to" the following:

> (a) scale receipts and other records of piece rate units;
> (b) time cards and any other time records;
> (c) pay documents including paystubs, paychecks, and electronic pay records;
> (d) other records and ESI that show the hours worked, basis for payment of wages, and/or gross and net wages paid;
> (e) any other record of amounts paid to each Plaintiff and Class member; and
> (f) employment contracts.

(Pltfs First Req. Prod. Docs, Req. No. 6, ECF No. 51-1, PageID.493-94). The request noted that it was limited to the "Class Period." (*Id.*, PageID.494). Document request 24 sought "[a]ll payroll records and pay stubs made, kept, and preserved in accordance with 29 U.S.C. § 1821(d)(1) and (2) [the AWPA pay-related recordkeeping provisions] regarding each Plaintiff and Class member, during or related to the Class Period." (*Id.* Req. No. 24, ECF No. 51-1, PageID.496). The "Class Period" for each of these document requests was defined as "the 2011 through the 2016 blueberry seasons." (*Id.*, Definitions, PageID.491).

Plaintiffs noted that they had served their discovery requests on January 13, 2017, and that defendants requested several extensions of time to produce the responsive documents and data. (Pltfs Br. at 2, ECF No. 51, PageID.484). Defendants had begun production of the responsive documents on Monday, March 13, 2017, and defense counsel promised production of "responsive documents related to FLSA conditional certification by the end of [that] week, including time and pay records." (Brion Doyle Email to Marni Willenson, March 13, 2017, ECF No. 51-2, PageID.500). On March 20, 2017, defendants served written responses to plaintiffs' discovery "but did not produce employee personnel files, pay stubs, or complete payroll data." (Pltfs Br. at 2, ECF No. 51, PageID.484).

Plaintiffs noted that defendants "[had] asserted no meaningful objection to production and, to the contrary, [had] promised production of this material – repeatedly." (*Id.* at 3, PageID.485). Plaintiffs' counsel noted that she had repeated plaintiffs' demand for the responsive documents on June 27, 2017, "warning that Plaintiffs would file a motion to compel if they were not received by the following business day." (*Id.*). On July 5, 2017, defense counsel advised plaintiffs' counsel that defendants had sent him "copies of the personnel file and flash drive," promising to "get them out" to plaintiffs' counsel. (Brion Doyle Email to Marni Willenson, July 5, 2017, ECF No. 51-4, PageID.510). Defense counsel advised plaintiffs' counsel on July 10, 2017, that he was sending that day copies of the personnel files and the flash drive that were promised July 5. (Brion Doyle Email to Marni Willenson, July 10, 2017, ECF No. 51-5, PageID.512). Nevertheless, plaintiffs filed the motion to compel,

5

noting that plaintiffs had been waiting almost six months for defendants to serve these responsive files, and that, "[a]lthough counsel for Defendants has stated that he would be 'mailing' them, such promises have been made to Plaintiffs repeatedly in the past and the documents never received." (Pltfs Br. at 3, ECF No. 51, PageID.485).

Plaintiffs also cited to the June 26, 2017, deposition testimony of Karen King, who was responsible for defendants' bookkeeping and payroll. (*Id.* at 2, PageID.484). Ms. King testified that she maintained Microsoft Excel files of employee hours, production, and payroll information. (Karen King Dep. at 11, ECF No. 51-3, PageID.504). She also testified that she had already provided hard copies of the 2013 employees' personnel files to defendant Tony Marr, the President of Blue Star Farms, for production to plaintiffs, and that it would take about fifteen to twenty minutes of her time to copy these files to a flash drive. (*Id.* at 62, 101; PageID.507-08).

Despite the various factual assertions and arguments in plaintiff's motion to compel, defendants filed a two-page response, arguing simply that the motion should be denied because plaintiffs' counsel had received all the responsive documents and information by July 11, 2017. (ECF No. 55, PageID.520-21; Defs Corrected Resp., ECF No. 56, PageID.522-23). Defendants asserted that "[t]he only potential open issue is a follow-up inquiry from Plaintiffs' counsel regarding the existence of additional Excel spreadsheets." (Defs Corrected Resp. at 2, ECF No. 56, PageID.523).

With leave of Court, plaintiffs filed a reply brief. (ECF No. 63). Plaintiffs asserted that their motion to compel had not been mooted by defendants' late production of documents. (*Id.* at 1-2, PageID.1318-19). Plaintiffs pointed out that

defendants still had not produced personnel files or pay stubs for 2011 and 2012; that, with the exception of 2013, defendants had not produced Excel payroll files for the entire class period (2011 through 2016); and that they had not confirmed that their production was complete.  (*Id.* at 5-6, PageID.1322-23).

On August 4, 2017, the Court conducted a hearing on plaintiffs' motion to compel.  (Minutes, ECF No. 65).  During the hearing, plaintiffs' counsel advised the Court that, because the class-certification motion was limited to the years 2011 through 2013, they no longer needed records for years 2014 through 2016.  (Hrg Tr. at 5, ECF No. 73, PageID.1392).  Counsel also advised the Court that defendants had not provided any records for years 2011 and 2012, and that defendants had not provided all the Excel data for 2013.  (*Id.* at 5-6, PageID.1392-93).

During the hearing, defense counsel asserted that, because plaintiffs' motion to compel cited to Ms. King's deposition testimony concerning 2013 records, the motion should be construed as limited to records of that year.  (*Id.* at 10-15, PageID.1397-1402).  Counsel also asserted that the parties' negotiations regarding a potential modification of the class period "[had] guided [defendants] towards focusing on 2013."  (*Id.* at 17, PageID.1404).  Counsel offered nothing to suggest that defendants had produced any responsive documents for years 2011 and 2012, and he conceded that defendants were still unable to confirm whether they had produced all responsive documents from 2013.  (*Id.* at 19, PageID.1406).  Counsel was unable to advise the Court whether defendants had made any timely objections to plaintiffs' discovery requests.  (*Id.* at 11, PageID.1398).

Based on the lack of any evidence of a timely objection, the Court found that defendants had waived any putative objection to the discovery requests at issue (document requests 6 and 24). (Hrg Tr. at 11-12, 17-18; ECF No. 73; PageID.1398-99, 1404-05). Finding no basis to limit plaintiffs' discovery requests – or their motion to compel – to 2013, the Court granted plaintiffs' motion in its entirety, and it ordered defendants to produce all documents responsive to requests 6 and 24 for the years 2011 through 2013. (*Id.* at 19, PageID.1406; Aug. 4, 2017, Order, ECF No. 66).

With respect to whether the Court should award costs for the motion, defense counsel discussed the parties' cooperation in exchanging discovery. (Hrg Tr. at 21-23, ECF No. 73, PageID.1408-10). But when he was questioned specifically about which exception to Rule 37(a)(5)'s mandate to award costs defendants were relying upon, counsel responded simply: "[s]ubstantial justification." (Hrg Tr. at 26, PageID.1413). The Court then ruled that costs would be awarded, noting:

> [D]efendants have provided the Court with nothing in terms of when they filed their response or served their response to the document requests, whether there were any objections asserted, timely or otherwise. That really leaves the Court with no ability to do anything but find there's a lack of substantial justification here.
>
> Frankly, I would be hard-pressed to find another situation where defendants' conduct with respect to their discovery obligations has been more lackadaisical. I appreciate the fact that counsel worked together to try to work things out, and certainly in cases like this agreements are made orally or in writing, and that's fine and they should be honored. But looking at this in its entirety, defendants' conduct here frankly is appalling.

(*Id.* at 27, PageID.1414).

In its October 5, 2017, order granting plaintiffs' motion to file the Second Amended Complaint, the Court noted that, "[t]o the extent the proposed Second Amended Complaint adds anything new, it does so only because the defense's delayed production of required discovery materials." (ECF No. 96, PageID.3004). With respect to the latter point, the Court cited, among other things, the August 4, 2017, order (ECF No. 66) granting plaintiff's motion to compel discovery (ECF No. 50). (*See* Order, ECF No. 96, PageID.3004).

On October 2, 2017, plaintiffs filed a motion for an order to show cause why defendants should not be held in civil contempt for violating the Court's August 4, 2017, order. (ECF No. 91). That same day, plaintiffs also filed a second motion to compel discovery. (ECF No. 92). Plaintiffs sought employee files responsive to document request 6 "for all 2011-2013 hand harvesters who worked in 2017," and employee files responsive to document request 4 "for all employees who did sign or were asked to sign declarations for Defendants." (*Id.* at 4, PageID.2973). Defendants responded to both motions on October 19, 2017. (ECF No. 103, 104).

The Court conducted a hearing on both motions on October 31, 2107. (Minutes, ECF No. 110). On the bases of the parties' oral and written submissions, the Court found that defendants had violated the August 4, 2017, order compelling production of documents responsive to plaintiffs' requests 6 and 24. (Oct. 31, 2017, Order, ECF No. 111). The Court also concluded "that sufficient evidence [had] been presented to warrant an evidentiary hearing to determine whether defendants shall be held in contempt, or otherwise sanctioned, for this conduct." (*Id.* at 1, PageID.3185). The

Court ordered that Blue Star Farms Office Administrator Dawn Morgan and defendant Anthony Marr, Blue Star Farms President, appear and give testimony at the hearing. (*Id.* at 2, PageID.3186).

The Court granted plaintiffs' second motion to compel discovery. (Oct. 31, 2017, Order, ECF No. 112). The Court ordered defendants to produce to plaintiffs "all W-4 and I-9 forms previously withheld from employee files responsive to plaintiffs' document request 6." (*Id.* at 1, PageID.3187). The Court also ordered defendants to produce to plaintiffs "applications from all employee files for blueberry harvesters who worked during the 2011, 2012, or 2013 seasons, and those employees who submitted declarations in this case, to the extent these documents have not already been produced." (*Id.* at 1-2, PageID.3187-88). The Court held plaintiffs' request for an award of attorneys' fees and costs associated with the second motion to compel in abeyance pending the show-cause hearing. (*Id.* at 2, PageID.3188).

The Court conducted the show-cause evidentiary hearing on November 21, 2017. (Minutes, ECF No. 124). During the hearing, both defendant Marr and Ms. Morgan testified. Mr. Marr testified that he had been involved in defendants' document production, and that he had been made aware of the Court's August 4, 2017, order compelling discovery. (Hrg Tr. at 5, ECF No. 126, PageID.4318). He also had reviewed the document requests that were the subject of that order. (*Id.* at 6, PageID.4319). Mr. Marr testified to his belief that the document requests did not cover employee W-4 and I-9 forms, noting that these forms were not maintained in the "employee files." (*Id.* at 7-8, PageID.4320-21). He acknowledged, however, that,

at some point, he was specifically made aware that plaintiffs' discovery requests included the W-4 and I-9 forms. (*Id.* at 10-11, PageID.4323-24). He testified to his "reluctance" to produce these forms, however, because they contained employees' social security numbers; but, on the other hand, he stated that he had been willing to provide a list of the employees' social security numbers. (*Id.* at 11-12, PageID.4324-25). Mr. Marr admitted that he knew a list of social security numbers would not satisfy plaintiffs' request for W-4 forms. (*Id.* at 12, PageID.4325).

During cross examination, Mr. Marr acknowledged that he understood that plaintiffs' document requests included "a request for complete records and files relating to each plaintiff and class member[.]" (*Id.* at 15, PageID.4328). He essentially conceded that the W-4 and I-9 forms were responsive to plaintiffs' document requests:

> Q. So a plain understanding of complete records relating to each plaintiff and class member would include the W-4 forms and the I-9 forms for each plaintiff and class member, would it not?
>
> A. You know, I can't disagree with you there, but I would say that, you know, when you read that part of the statement and you go down the list of things, the suggestions of what should be included, they weren't listed on there.

(*Id.* at 15-16, PageID.4328-29).

Ms. Morgan testified that she copied 2011 and 2012 employee files as directed by Mr. Marr. (Hrg Tr. at 31-32, ECF No. 126, PageID.4344-45). She did not see any of the discovery requests, but simply followed Mr. Marr's instructions. (*Id.* at 39-40, PageID.4352-53). She acknowledged that W-4 and I-9 forms are "records." (*Id.* at 34, PageID.4347).

11

At the conclusion of the hearing, the Court found that defendants violated its

August 4, 2107, order compelling discovery:

> Here's how I see it counsel. The document request says "complete records and files." It doesn't ask for personnel files, employee files, payroll files. Complete records and files.
>
> You know, according to Mr. Marr's testimony, even he appears to acknowledge that W-4s are records, I-9s are records, so I don't think it matters whether defendants believed these were payroll records or not. . . . So a W-4 is a record. An I-9 form is a record. Clearly those were encompassed by document request number 6. They were not produced.
>
> My order of August [4th] required the defendants to provide all documents responsive to document request 6 and 24 for time periods 2011 to 2013. That wasn't done. There's no question that my order has been violated. . . .

(Hrg Tr. at 45-46, ECF No. 126, PageID.4358-59). With respect to possible sanctions, the Court noted: "I've heard nothing here that would remotely justify the failure to produce those documents. The only thing that remains is for me to determine the appropriate sanctions, and there will be sanctions." (*Id.* at 54, PageID.4367).

## Discussion

### I. Plaintiffs' Petition for Reasonable Expenses Regarding Plaintiffs' First Motion to Compel.

Given that the Court granted plaintiffs' first motion to compel discovery, it must consider whether to award reasonable expenses incurred in bringing the motion. Rule 37(a)(5)(A) provides, in pertinent part: "If the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses

incurred in making the motion, including attorney's fees" (emphasis supplied). There are only three exceptions to this rule. *See* FED. R. CIV. P. 37(a)(5)(A)(i-iii).

In opposing plaintiffs' petition, defendants rely only upon the first of the exceptions: that plaintiffs filed the motion to compel "before attempting in good faith to obtain the disclosure or discovery without court action." FED. R. CIV. P. 37(a)(5)(A)(i). (*See* Defs Resp. at 2-7, ECF No. 80, PageID.1999-2004). Defendants also assert, for the first time, that they objected to plaintiffs' document requests 6 and 24 on the basis of relevance. (*See id.* at 3, PageID.2000). Both of these arguments have been waived. Moreover, they are meritless.

Defendants' two-page response to plaintiffs' motion to compel discovery simply notes that they had advised plaintiffs' counsel on July 10, 2017, the day before the filing of the motion to compel, that they were sending responsive documents, and that plaintiffs' counsel received the documents the next day. (Defs Corrected Resp. at 2, ECF No. 56, PageID.523). Defendants concede in that filing that they were still in "the process of determining whether additional materials exist." (*Id.*). Nowhere in this filing do defendants challenge plaintiff's compliance with Local Rule 7.1(d)'s consultation requirement. Moreover, during the August 4, 2017, hearing on the motion to compel, the Court asked defendants' counsel whether any exceptions to Rule 37(a)(5)(A)'s mandate to award costs applied. Counsel responded simply: "[s]ubstantial justification." (Hrg Tr. at 26, ECF No. 73, PageID.1413). Defendants' failure to raise the Rule 7.1(d) concurrence issue in its response to the motion to

compel and again during the hearing on the motion constitutes waiver.[1]   *See*

*Berryman v. Sampson*, No. 10-12169, 2012 WL 1570839, at *1 (E.D. Mich.

May 3, 2012) ("[F]ailure to address an issue constitutes a waiver or abandonment of

the argument.") (citing *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d

367, 374 (6th Cir. 1998)).[2]

Defendants have also waived any relevance objection to the discovery requests.

During the August 4, 2017, hearing, the Court specifically asked defendants' counsel

whether defendants had asserted any objection, timely or not, to the document

requests.  Defense counsel's response was, "Standing here today, I don't know."  (Hrg

Tr. at 11, ECF No. 73, PageID.1398).  Even now, defendants merely mention the

relevance objection without any argument or explanation to support the objection.

The perfunctory nature of this assertion constitutes an additional basis for finding

that the issue has been waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th

Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived.  It is not sufficient for a party

---

[1] One of Rule 37(a)(5)(A)'s exceptions to the mandate to award costs arises when "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action."  FED. R. CIV. P. 37(a)(5)(A)(i).

[2] Even as late as the August 4, 2017, hearing, defendants were still unable to confirm that they had produced responsive documents from 2013 (Hrg. Tr. at 19, ECF No. 73, PageID.1406), much less could they confirm that they produced the responsive documents from 2011 and 2012.  Having taken this stance weeks after plaintiffs filed their motion to compel, it is hard to imagine how continued consultation efforts would have obviated the need to file the motion.

to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation and citation omitted)).

Moreover, the relevance of the requested information is beyond reasonable debate. This case involves both AWPA and FLSA claims regarding whether defendants properly paid plaintiffs in 2011 through 2013. The records here specifically include pay information, and plaintiffs limited their request to the years for which the Court certified the class action.

Defendants' renewed argument – first raised in the August 4, 2017, hearing on the motion to compel – that plaintiffs' motion to compel should be construed as limited to the 2013 documents (Defs Resp. at 3-7, ECF No. 80, PageID.2000-04) warrants little response. The Court has previously addressed this issue:

> In this case we have documents being produced after the motion has been filed, but beyond that there's no question here that the document requests included the time period 2011 through 2016, even though plaintiffs are not now seeking past 2013. Those are the documents that were relevant here.
>
> There was – defendants have provided the Court with nothing in terms of when they filed their response or served their response to the document requests, whether there were any objections asserted, timely or otherwise. That really leaves the Court with no ability to do anything but find there's a lack of substantial justification here.
>
> Frankly, I would be hard-pressed to find another situation where defendants' conduct with respect to their discovery obligations has been more lackadaisical. I appreciate the fact that counsel worked together to try to work things out, and certainly in cases like this agreements are made orally or in writing, and that's fine and they should be honored. But looking at this in its entirety, defendants' conduct here frankly is appalling.

(Hrg Tr. at 27, ECF No. 73, PageID.1414).

Putting aside the waiver, the record demonstrates plainly that plaintiffs had sufficiently attempted a resolution of the discovery disputes before seeking the Court's intervention, and defendants' positions regarding the discovery disputes were not substantially justified. Plaintiffs' first motion to compel was filed some six months after serving their discovery requests. Plaintiffs' actions in this regard can hardly be described as precipitous.

The Court will award plaintiffs reasonable attorney's fees and expenses that were incurred in bringing their motion to compel. The award of costs is the norm, rather than the exception. *Eastern Maico Distribs., Inc. v. Maico-Fahrzeugfabrik*, 658 F.2d 944, 948 n.4 (3d Cir. 1981); *see Boles v. Lewis*, No. 1:07-cv-277, 2009 WL 2021743, at *3 (W.D. Mich. July 7, 2009).

The Court having found a sufficient basis for awarding fees and costs, the only remaining issue is the reasonableness of the amount sought. The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[3]

---

[3] The Sixth Circuit "rel[ies] on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute." *Isabel*, 404 F.3d at 415.

1.    <u>The Reasonableness of the Hourly Rates Sought</u>

The Court begins this analysis by determining a reasonable hourly rate. "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). There is a presumption in favor of the community market rates. *See, e.g., Blum*, 465 U.S. at 895 ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd*, 227 F.3d at 350 ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" (quoting *Blum*, 465 U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The so-called "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]'" *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Having determined that the community market rule applies here, the next step is determining the prevailing market rate in the Grand Rapids area. In order to

determine the local market rate, courts should rely on a combination of its own expertise and judgment. *Garber v. Shiner Enterprises, Inc.*, No. 1:06-cv-646, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-cv-93, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)). The court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence of reasonable rates. *See Wells v. Corporate Accounts Receivable*, 683 F. Supp. 2d 600, 602 (W.D. Mich. 2010). Other relevant sources include the attorney's actual billing rate and fee awards from prior cases. *Id.*

Plaintiffs seek a $475.00 hourly rate for Attorney Marni Willenson, and a $225.00 hourly rate for Attorney Benjamin O'Hearn, and a $375.00 hourly rate for Attorney Teresa Hendricks. (ECF No. 72, PageID.1358, 1363). Ms. Willenson and Mr. O'Hearn's rates are supported by declarations from each attorney setting out the respective attorney's experience and areas of expertise. (Marni Willenson Decl., ECF No. 72-1, PageID.1366-71); Benjamin O'Hearn Decl., ECF No. 72-2, PageID.1383-84). Ms. Hendricks' rate is supported by her curriculum vitae, filed earlier in this case. (*See* ECF No. 62-9, PageID.1243-45). Ms. Willenson's hourly rate is further supported by a declaration from Joshua Karsh, an attorney familiar with her experience and her litigations skills. (Joshua Karsh Decl., ECF No. 72-1, PageID.1378-79). Mr. Karsh also opines that Ms. Willenson's $475 hour rate "is consistent with prevailing rates charged in comparable cases by attorneys of similar qualifications, skill and experience in Chicago." (*Id.* at 2, PageID.1379).

18

"The district court has broad discretion in determining a reasonable hourly rate for an attorney." *Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016). The Court does not question the validity of the assertions in these declarations. There is substantial basis to justify the hourly rate sought by Mr. O'Hearn and Ms. Hendricks for west Michigan. There is also substantial basis to justify Ms. Willenson's hourly rate for Chicago, where her office is located. This rate is a bit high, however, for west Michigan.

Plaintiffs argue that an exception to the community market rule is appropriate in this case for three reasons: it was reasonable for Migrant Legal Aid to recruit Ms. Willenson due to her firm's extensive resources and Migrant Aids limited resources; this case involves a specialized area of practice; and Ms. Willenson's hourly rate is the actual rate she charges, as opposed to some "puff" rate. (Pltfs Pet. at 4-5, ECF No. 72, PageID.1360-61). The last reason cited will be disregarded, as it has nothing to do with whether the Court should recognize an exception to the community market rule.

The Sixth Circuit has recognized the potential for exceptions to the community market rule. *See Smith v. Service Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014) (citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir.1983)). Such exceptions must be well documented and explained, however. *Cf. Smith*, 592 F. App'x at 370 ("The district court did not adequately explain its reasons for departing from the local rate for associates and did not discuss the governing criteria. Thus, we remand for further consideration."). Moreover, "judges

may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535 (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982)).

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of an hourly rate, as well as the number of hours worked:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415. None of these factors support an exception to the community market rule in this matter, and several militate against it.

Defendants' failure to produce discovery caused plaintiffs' counsel to expend time in making the motion to compel, but the questions presented in that motion were neither novel nor complex. Even assuming plaintiffs are correct in their characterization of the nature and complexity of the case overall, the Court must consider the novelty and difficulty of the questions presented *in the motion to compel*, and the skills needed to perform *that* legal service properly. *See Isabel*, 404 F.3d at 415 (factors (2) and (3)).

There is nothing about the motion to compel that required specialized expertise that was unavailable in the Grand Rapids legal market; nor is there any reason to believe counsel from Migrant Aid lacked the resources to handle that motion. Plaintiffs have competent local counsel in this case. Plaintiffs were, of course, free to choose which counsel to assign to the motion to compel in this case – and they have expressed valid reasons for their choice. The point is, however, that it was a choice, not a need, to use Chicago counsel to take the lead on the motion to compel. *See Northeast Ohio Coal. for the Homeless*, 831 F.3d at 716 ("If competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by the out-of-town specialist."). There is no basis for invoking an exception to the community market rule.

Plaintiffs have cited to the State Bar of Michigan's Economics of Law Practice in Michigan, which includes reported billing rates throughout Michigan. This is an acceptable source. *See Wells*, 683 F. Supp. 2d at 603; *see also* Toliver v. JBS Plainwell, Inc., No. 1:11-cv-302, 2016 WL 165031, at*8 (W.D. Mich. Jan. 14, 2016) ("This is clearly an acceptable source.") (citing *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 501-02 (6th Cir. 2006)).

According to the most recent survey, the hourly rate for a Grand Rapids area attorney in the 75th percentile is $350.00, and the 75th percentile hourly rate for a Michigan attorney who practices in the field of labor and employment is $375.00 (www.michbar.org/file/pmrc/articles/0000153.pdf (last viewed March 29, 2018)). The Court determines that the $375.00 hourly rate is appropriate for a Grand Rapids

attorney of Ms. Willenson's experience and expertise. This is the same billing rate Ms. Hendricks charges. She is a senior litigator and the Director of Migrant Legal Aid, and she has represented farm workers for some twenty years. (*See* Hendricks Curriculum Vitae, ECF No. 62-9, PageID.1243-45).

    2.   <u>The Reasonableness of the Hours Expended</u>

Once a Court has determined a reasonable hourly rate, it must multiply that rate by "the proven number of hours reasonably expended on the case by the attorney." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In order to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984); *see also Howe v. City of Akron*, 705 F. App'x 376, 383 (6th Cir 2017).

The Court has reviewed the time entries of plaintiffs' counsel. Mr. O'Hearn indicates that he expended 0.3 hours consulting with defendants' counsel regarding the discovery issues, 0.2 hours consulting with Ms. Willenson, and 3.0 hours drafting and revising the motion to compel. (ECF No. 72-2, PageID.1385). The time and work reported by Mr. O'Hearn is reasonable and appropriate to his tasks. The 0.5 hours of time Ms. Hendricks reports for drafting her declaration (ECF No. 72, PageID.1363) is similarly reasonable.

Ms. Willenson's records indicate that she expended 1.5 hours in consultation with defense counsel regarding the discovery issues, but is seeking reimbursement for only 0.9 hours of that time; that she spent 0.7 hours reviewing and revising Mr. O'Hearn's draft motion; that she spent 0.1 hours evaluating a spreadsheet; that she expended 10.9 hours drafting the reply brief; that she spent 0.8 hours attending the August 4, 2017, hearing; that she expended 4.9 hours in actual, round-trip travel time; and that she spent 8.0 hours drafting the fee petition, for which she seeks reimbursement for 3.0 hours; and that she spent 1.5 hours on research, reviewing fees and expenses, and drafting her declaration. (ECF No. 72-1, PageID.1372-73). All of this time and work is reasonable, with the exception of the time spent drafting the reply brief. The Court finds that 4.0 hours would have been sufficient to that task, given Ms. Willenson's level of experience. Accordingly, the Court will award plaintiffs for 15.9 hours of Ms. Willenson's time.

The 3.5 hours reasonably expended by Mr. O'Hearn equates to an award of $787.50 (3.5 X $225); the 0.5 hours reasonably expended by Ms. Hendricks equates to an award of $187.50 (0.5 X $375); and the 15.9 hours reasonably expended by Ms. Willenson equates to an award of $5,962.50 (15.9 X $375). This results in a total award for attorneys' fees of $6,937.50.

3. The Reasonableness of the Expenses Incurred

Plaintiffs seek $192.60 to reimburse Ms. Willenson for the mileage she drove to attend the August 4, 2017, hearing on the motion to compel. This amount is reached by multiplying the 360-mile round trip (see ECF No. 72-1, PageID.1375) by

the .535 mileage rate approved by the U.S. General Services Agency. Plaintiffs are foregoing reimbursement for costs their counsel incurred for, meals, photocopying, and legal research fees. (*See* ECF No. 72, PageID.1364-65).

Defendants do not challenge the reasonableness of the amount of plaintiffs' cost-reimbursement request. Instead, they simply rely upon their argument that plaintiffs inadequately conferred with them before filing the motion to compel. (*See* Defs Resp. at 7, ECF No. 80, PageID.2004 ("Plaintiff's claimed mileage expense for Attorney Willenson's travel from Chicago in the amount of $192.60 should also be deducted, since the hearing was necessitated only by Plaintiff[s'] expansion of their motion beyond the scope of the pre-motion conference.")).

The Court has already determined that plaintiffs satisfied their consultation requirement. Accordingly, plaintiffs will be awarded the $192.60 in requested cost reimbursement, as the Court finds the request reasonable.

## II. Sanctions for Violating the Court's August 4, 2017, Compulsion Order.

It is settled law that federal courts have the inherent authority to punish those who violate court orders. *See, e.g., Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 831 (1994). "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution.'" *Id.* (quoting *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L. Ed. 242 (1821)). The Supreme Court described the nature and necessity of the contempt power in *Gompers v. Buck's Stove & Range Co.*:

[W]hile it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.

If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

221 U.S. 418, 450 (1911).

Under the Federal Rules of Civil Procedure, the Court has discretion to impose a number of sanctions for violations of its discovery orders. *See* FED. R. CIV. P. 37(b)(2)(A). Among those sanctions are "treating as contempt of court the failure to obey any [such] order[.]" FED. R. CIV. P. 37(b)(2)(A)(vii). Instead of these sanctions, or in addition to them, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

The standards for civil contempt are well established. The party seeking civil contempt has "the burden of establishing by clear and convincing evidence that [the alleged contemnors] 'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Based on the evidence in the record, and as discussed above, plaintiffs have met their burden for civil contempt.

Defendants' failure to comply with their discovery obligations has resulted in prejudice to plaintiffs by unduly delaying the litigation of this case. (*See* Oct. 5, 2017, Order, ECF No. 96, PageID.3004 (In granting plaintiffs' motion to amend the complaint, the Court noted that, "[t]o the extent the proposed Second Amended Complaint adds anything new, it does so only because the defense's delayed production of required discovery materials."). Nevertheless, and giving defendants the benefit of the doubt, the Court will forego civil contempt sanctions in favor of ordering defendants to pay the reasonable expenses, including attorney's fees, caused by their failure. *See* FED. R. CIV. P. 37(b)(2)(C). This will include plaintiffs' expenses in bringing their successful motion for a show-cause order (ECF No. 91), their successful second motion to compel discovery (ECF No. 92),[4] the October 31 hearing concerning these motions (Minutes, ECF No. 110), and the November 21, 2017, show-cause hearing (Minutes, ECF No. 124).

Defendants are warned that further violations of any of the Court's orders may result in a civil or criminal contempt citation, or other sanctions authorized by Rule 37(b). In addition, further violations of their discovery obligations may result in additional sanctions against defendants.

---

[4] The fact that the Court granted plaintiffs' second motion to compel is an independent basis for requiring defendants to pay their reasonable expenses, unless one of three exceptions applies. *See* FED. R. CIV. P. 37(a)(5)(A)(i-iii). Under the facts and circumstances outlined herein, it appears that none of these exceptions apply. Defendants may, of course, argue in favor of the application of one of these exceptions in response to plaintiffs' petition.

## Conclusion and Order

For the reasons set forth herein, plaintiffs' petition for attorneys' fees and costs (ECF No. 72) is **GRANTED in part**. Accordingly,

**IT IS ORDERED** that defendants shall, within 21 days of the date of this Order, pay plaintiffs $7,130.10 as reimbursement for their reasonable expenses in bringing their motion to compel discovery (ECF No. 50).

Plaintiffs' petition (ECF No. 72) is otherwise **DENIED**.

Also, for the reasons stated herein, **IT IS ORDERED** that defendants shall be **SANCTIONED** for their violation of the Court's August 4, 2107, discovery order (ECF No. 66) by reimbursing plaintiffs for their reasonable expenses incurred as a result of defendants' violation. Accordingly,

**IT IS ORDERED** that plaintiffs shall, within fourteen days of the date of this Order, file their petition for reasonable expenses, including attorneys' fees, pursuant to Rule 37(b)(2)(C), associated with the filing of their successful motion for a show-cause order (ECF No. 91), their successful second motion to compel discovery (ECF No. 92), the October 31 hearing concerning these motions (Minutes, ECF No. 110), and the November 21, 2017, show-cause hearing (Minutes, ECF No. 124).

**IT IS FURTHER ORDERED** that defendants shall, within fourteen days of the filing of plaintiffs' petition for expenses, file a response.

**IT IS SO ORDERED.**

Date: March 29, 2018       /s/ Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge